## In re MOORHEAD KNITTING CO.
### No. 10230.

District Court, M. D. Pennsylvania.
Oct. 16, 1943.

Clarence P. Wynne, of Scranton, Pa., trustee.

Harry S. Knight, and J. P. Carpenter, both of Sunbury, Pa., for trustee.

Arthur Richenthal and Richard V. Bandler, both of New York City, for Securities and Exchange Commission.

John W. Crolly, of Scranton, Pa., special Master.

W. E. Shissler, F. Brewster Wickersham, Oscar G. Wickersham, Paul Hutchison, Rosenberg & Rosenberg, James H. Booser, all of Harrisburg, Pa., Russel B. Updegraff, of New Cumberland, Pa., Joseph Nissley, Samuel Wilson, Elmer E. Erb, R. U. Douglass, Walter H. Compton, Mark T. Milnor, and Gilbert Nurick, all of Harrisburg, Pa., Leon E. Sperling, of Philadelphia, Pa., Charles L. Miller, of Lancaster, Pa., for various preferred stockholders, debenture holders, bondholders' committee, committee of preferred bondholders, bondholders' protective committee, creditors, etc.

JOHNSON, District Judge.

To the Revised Plan of Reorganization filed in the above matter the Securities and Exchange Commission filed objections and also filed exceptions to the Report of the Special Master approving the Revised Plan.

By order of this Court dated June 18, 1943, issues were framed by rule and answer and evidence thereon produced before this court. The issues are separate and relate to three distinct subject matters.

The first issue pertains to a certain fund which by order of this court dated January 18, 1943, was deposited in a special account in order to distinguish it from the general funds in this reorganization. The fund arose from the sale of real estate of the debtor located in Chambersburg, Pennsylvania, against which a first mortgage to secure the sum of $7,500 was recorded in favor of one E. S. Herman, Sr.

In this issue it is the contention of the Securities and Exchange Commission that payment of the fund to the original mortgagee would constitute a preference in that the mortgage debt was illegally contracted

without the adoption by the board of directors of the debtor corporation of a resolution setting forth a proposed increase in corporate indebtedness and directing that the question of that proposed increase be submitted to a vote of the shareholders of the corporation at an annual or special meeting. It is the contention of the original mortgagee that the mortgage was a valid instrument properly executed in behalf of the mortgagor corporation to secure a loan of money to be used, and which actually was used, in the usual course of business of the corporation for payment of obligations then due.

From the evidence the following facts appear: In December of 1939 the Moorhead Knitting Company was in need of funds to meet current expenses then due, including the payroll. At a meeting of the executive committee of the corporation, E. S. Herman, Sr., one of the directors, offered to lend the company the sum of $7,-500 provided he receive as security therefor a mortgage on the Chambersburg property. The executive committee authorized the loan and, because the need for the money was immediate, E. S. Herman, Sr., issued his check for $7,500 payable to Moorhead Knitting Company and accepted a note as temporary security therefor. The check was deposited to the credit of Moorhead Knitting Company on December 20, 1939. On that same day upon the books of Moorhead Knitting Company in the "Transcript of Voucher Register and Bank Statement" the first entry shows a check for $8,550.70 drawn for use of the payroll account. At the time the check of $7,500 was deposited to the credit of Moorhead Knitting Company, the bank balance of that concern was in the approximate amount of $2,200 and the amount then due for the payroll alone was in excess of the amount loaned by Herman. Prior to the transfer of the sum of $8,550.70 to the payroll account the bank balance had been reduced by checks issued to the approximate amount of $1,100 and although other funds were deposited and other withdrawals made, the only testimony produced was to the effect that all the money deposited was used in the usual course of business of the corporation for payment of obligations then due. On January 3, 1940, at a regular meeting of the board of directors, attended by a majority of the members thereof, a resolution was offered providing that the corporation borrow from E. S. Herman the sum of $7,500, repayable within five years from the date of the loan, and authorizing the giving of a mortgage on the Chambersburg real estate to secure the loan and also appointing an attorney-in-fact to act for the corporation in effectuating the transaction. The resolution was duly seconded and approved and the mortgage subsequently executed and recorded.

The contention of the Securities and Exchange Commission cannot be sustained. Under the evidence submitted it was not necessary to submit the transaction of the loan and mortgage to a meeting of stockholders. Sec. 309, Article 3, of the Act of May 5, 1933, P.L. 364, 15 P.S. § 2852—309, expressly provides that: "Nothing herein contained shall be construed to apply to indebtedness contracted in the usual course of corporate business." This proviso applies to the transaction under consideration. Sun Coal Corporation v. New Upper Lehigh Coal Company, 340 Pa. 547, 17 A. 2d 885. The fund as set aside from the proceeds of the sale of the Chambersburg real estate should be used in discharge of the obligation due E. S. Herman, Sr.

The second issue pertains to certain claims based upon the 5% mortgage bonds of the debtor allowed in the Revised Plan of Reorganization and approved by the Special Master in his Report.

By a trust indenture dated July 1, 1936 between the Moorhead Knitting Company and the Central Trust Company of Harrisburg, Pennsylvania, the following obligation was imposed upon the debtor: "(Article I): 'Section 5. The Corporation, its successors and assigns, will pay to the Trustee on or before May First, 1939, an amount sufficient to retire Five Thousand ($5,000.) Dollars par value of said Bonds, on or before May First of the years 1940, 1941, and 1942 an amount sufficient to retire Ten Thousand ($10,000.) Dollars par value of said Bonds in each of said years, and on or before May First of the years 1943, 1944 and 1945 an amount sufficient to retire Fifteen Thousand ($15,000.) Dollars par value of said Bonds in each of said years. Said amount or amounts shall constitute a sinking fund, which shall be used by the Trustee from time to time for purchasing any of said Bonds at a price not exceeding their redemption price effective on the dates of purchase together with accrued interest

thereon; or for redeeming and retiring on the first interest paying date of said Bonds following the receipt of said amount or amounts at the redemption price effective upon such interest paying dates together with accrued interest thereon such of said Bonds as shall be ascertained for redemption in the manner provided in Section 4 of Article I of this indenture of Mortgage or Deed of Trust.'" Section 4 of Article I sets forth the following method for redemption and reads in part as follows: "The Bonds to be redeemed, if in part, shall be ascertained by drawing the respective numbers thereof by lot by the Trustee at least thirty (30) days prior to said date upon which the same are proposed to be paid. Notice of all Bonds to be redeemed, whether in whole or in part, shall be given to the holders thereof by publication or advertisement thirty (30) days prior to said date upon which said Bonds are proposed to be redeemed, in a newspaper of general circulation published in the City of Harrisburg, Pennsylvania."

It is the contention of the Securities and Exchange Commission that by reason of the failure of the debtor to comply with the terms of the trust indenture public holders of bonds issued thereunder were deprived of any opportunity to participate in the retirement provisions of the trust indenture and that certain bond holders, to wit, J. W. Bowman, Bowman & Company, E. S. Herman, Sr., J. C. Herman, J. C. Herman & Co., F. H. Neale, and H. T. Neale, named by the Securities and Exchange Commission as "officers, directors and insiders", by reason of their connections with the debtor, participated in practices which should result in the subordination of their claims so that they should not share on an equal basis with the other bond holders. Counsel for the above named bond holders maintain that the provisions of the trust indenture were followed.

From the evidence it is apparent that upon the dates provided for the payment by the debtor corporation to the indenture trustee of sums of money for retirement purposes the following transactions took place: On May 1, 1939, the first retirement date, the debtor corporation issued a check for $5,000 to the indenture trustee which was deposited in the sinking fund account. On that date E. S. Herman, Sr., delivered bonds in the amount of $5,000.00 to the trustee and received in exchange therefor a check of the trustee in the amount of $5,000 payable to the order of Ed. S. Herman, Sr. That check was endorsed "for deposit only to the credit of Moorhead Knitting Co., Ed S. Herman, Sr.," and duly entered upon the books of the debtor. Coupons on these bonds had previously been presented to the trustee by the debtor and later an audit revealed that the bonds so retired were unissued bonds, so that no reduction of indebtedness took place. On May 1, 1940, the debtor delivered to the indenture trustee bonds having a par value of $10,000. These bonds were acquired by the debtor as follows: Bonds to the value at par of $3,400 by purchase at par from John C. Herman and J. W. Bowman, and $6,600 from E. S. Herman, Sr., by repayment of a loan for which these bonds had been pledged as collateral. As confirmed by audit this retirement was effectuated by means of unissued bonds so that there was no reduction of bond indebtedness. On May 1, 1941, there was a surrender of $10,000 par value in bonds to the indenture trustee. These bonds had been acquired by the debtor from J. W. Bowman, E. S. Herman, Sr., A. Herman Fager, E. S. Herman, Jr., and Frances H. Neale at 90% of par. The result of all of the above transactions was that no outstanding bonds were purchased by the indenture trustee nor were any bonds retired by lot.

The Securities and Exchange Commission proposes that the Revised Plan of Reorganization be amended to provide for an investigation by the Reorganization Trustee of the matters discussed herein and of the existence and extent of any possible cause of action against the indenture trustee. As above stated the change in the Revised Plan sought by the Securities and Exchange Commission is the subordination of the claims of those bond holders who participated in these transactions.

Under the circumstances as set forth above this Court does not consider it advisable to prolong the present controversy nor to delay the progress of the reorganization by awaiting the result of an independent investigation. To follow the proposal of the Securities and Exchange Commission would mean that after the proposed investigation had been made and recommendations based thereon had been submitted to this Court, further and undoubtedly lengthy proceedings might be necessary in order to give any parties affected their day in court. This is not necessary and

this Court is of the opinion that under the evidence submitted the extremely remote possibility of any advantage to be gained is outweighed by the certain prolongation of this reorganization.

It is true that the provisions of the trust indenture were not followed and it is also true that the outstanding indebtedness under the bond issue was not reduced. It would be most difficult to ascertain, however, by other than conjectural methods, just what injury resulted therefrom and upon whom the injury was inflicted. The public holders of bonds were undoubtedly affected but which individuals suffered loss and the extent thereof would be impossible to ascertain. The evidence does not disclose that the parties whose bond claims are the subject of this proceeding gained any profit or advantage to themselves when the financial transactions participated in by the debtor corporation during the years of 1939, 1940 and 1941 are examined. During those years the corporation was so short of funds that the payroll could not be met, and members of the board of directors advanced money in the form of loans, some of them now unsecured in large amounts, in an effort to keep the debtor corporation solvent. The evidence further discloses that the indenture trustee was not conversant with the financial condition of Moorhead Knitting Company and derived no advantage from the failure to comply with the provisions of the trust indenture.

It is not surprising that under such circumstances funds were not available for bond retirement. The means employed in preventing a default are not to be condoned, but any attempt to correct the result of those actions at this time and in this proceeding would be based upon methods so conjectural as to be valueless and would only result in further delay in the reorganization proceedings. With the exception of the Securities and Exchange Commission no other objections have been filed and all the parties in interest are against the position taken by the Securities and Exchange Commission and desire the reorganization proceedings brought to an early conclusion. The contention of the Securities and Exchange Commission is not sustained.

The third issue relates to a sale by the reorganization trustee of certain machinery for the net sum of $68,358.03. Out of that sum an allocation of $11,828.70 was made to the Schuylkill Hosiery Mills in payment of a claim of a two-thirds ownership in the said machinery. From that allocation Schuylkill Hosiery Mills made, inter alia, the following payments: To J. C. Herman, $87.62; to E. S. Herman, Sr., $525.71; to J. W. Bowman, $876.18.

It is the contention of the Securities and Exchange Commission that the Schuylkill Hosiery Mills had no title nor interest in the machinery, that the allocation was improper and that the individuals above named should have their respective distributive shares reduced by the amounts they have already received. That contention is sustained.

It appears from the record that at the time the sale was held and the allocation made to Schuylkill Hosiery Mills the reorganization trustee believed that Schuylkill Hosiery Mills had an interest in the machinery. Subsequently, among the old records of the debtor, leases were found which established ownership exclusively in Moorhead Knitting Company.

Now, therefore, the issues raised by the Rule to Show Cause of June 18, 1943, and the answer thereto, are disposed of as follows: First, it is hereby ordered and decreed that the funds set aside from the proceeds of the sale of the debtor's real estate located at Chambersburg, Pennsylvania, be used in discharge of the obligation due E. S. Herman, Sr.; second, the claims of J. W. Bowman, Bowman and Co., E. S. Herman, Sr., J. C. Herman, J. C. Herman and Co., F. H. Neale and H. T. Neale, bond holders, shall not be subordinated to the claims of other bond holders; third, the distributive share of J. C. Herman shall be reduced by the amount of $87.62; the distributive share of E. S. Herman, Sr., shall be reduced by the amount of $525.71; and the distributive share of J. W. Bowman shall be reduced by the amount of $876.18, and it is hereby further ordered that the Revised Plan of Moorhead Knitting Company be amended in accordance with this order.